UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JASMINE S. KINNISON,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

NO.  CV-11-0186-JLQ

MEMORANDUM OPINION AND
ORDER RE:  MOTIONS FOR
SUMMARY JUDGMENT

      BEFORE THE COURT are Cross-Motions for Summary Judgment.  (ECF NO. 18 & 20).  Plaintiff is represented by **Lora Lee Stover**.  Defendant is represented by Assistant United States Attorney **Frank A. Wilson** and Special Assistant United States Attorney **Richard Morris**.  This matter was previously before Magistrate Judge Imbrogno and set for hearing without oral argument.  On October 30, 2012, the matter was reassigned to the undersigned for all further proceedings.  The court has reviewed the record and the parties' briefs.

      This court's role on review of the decision of the Administrative Law Judge (ALJ) is limited.  The court reviews that decision to determine if it was supported by substantial evidence and contains a correct application of the law.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  This court is obligated to affirm the ALJ's findings if they are supported by the evidence and reasonable inferences to be drawn therefrom.  *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012).  Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion.

## I.  JURISDICTION

      In August 2007, Plaintiff Jasmine S. Kinnison filed an application for

Disability Insurance Benefits alleging a disability onset date of August 15, 2004. Plaintiff alleges disability attributable to "severe mental conditions" (ECF No. 19, p. 3) including depression and anxiety. Her application was denied initially, and on reconsideration. After timely requesting a hearing, Plaintiff appeared before Administrative Law Judge Moira Ausems on August 21, 2009. (Transcript at ECF No. 9-2 pages 46-102). The ALJ issued a decision denying benefits on January 14, 2010. (ECF No. 9-2, p. 24-38). Plaintiff filed a request for review with the Appeals Council, which was denied on April 19, 2011. The Appeals Council then considered new evidence and again denied review on May 27, 2011. The decision of the ALJ became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).

## II.  SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if the  impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is, benefits are denied. If she is not, the decision maker proceeds to step two.

Step 2: Does the claimant have a medically severe impairment or combination of impairments?  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity?  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past?  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant is able to perform her previous work, she is not disabled.  If the claimant cannot perform this work, the inquiry proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education and work experience?  20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the plaintiff to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ORDER - 3

### III. STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).        This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, not this court, to resolve conflicts in the evidence. *Richardson*, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

### IV. STATEMENT OF FACTS

The facts are contained in the medical records, administrative transcript, and the ALJ's decision, and are only briefly summarized here.  At the time the ALJ issued her decision, Plaintiff was 34 years old.  Plaintiff has a high school education, "some college", and went through a Certified Nurse Assistant training program. (ECF No. 9-2, p. 51).  She has held a variety of jobs including most recently working intermittently as a Certified Nurse Assistant from approximately 2003 to 2006. (*Id*. at 52).  Prior to work as a CNA, Plaintiff had worked as a

telemarketer and cashier, and had worked as a banquet server and in retail. The record establishes that Plaintiff had not worked since sometime in the latter half of 2006. (ECF No. 9-2, p. 68-71).

Plaintiff claimed disability based primarily on depression and anxiety. Although Plaintiff alleged a variety of other "difficulties" such as low back pain, neck, and thumb, she claimed that the mental health concerns outweighed the physical impairments. (*Id*. at 49-50). Plaintiff alleged that the combined effect of her impairments rendered her disabled. (*Id*. at 50). Although Plaintiff had a history of substance abuse, Plaintiff was largely sober during the relevant time period and her attorney represented that, "I don't think there has been any material usage throughout the relevant timeframe." (*Id*. at 49). The ALJ found Plaintiff was not disabled. Plaintiff raises several challenges to that determination, including that the ALJ did not properly evaluate Plaintiff's residual functional capacity ("RFC"), erred in assessing Plaintiff's credibility, and that the evidence overall does not support the finding.

## V. COMMISSIONER'S FINDINGS

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 12, 2005. The alleged onset date was August 15, 2004, however Plaintiff had previously made a disability application that was denied on May 11, 2005. The ALJ found Plaintiff did not establish good cause for reopening the prior determination. (ECF No. 9-2, p. 24). Plaintiff does not challenge that she failed to provide good cause for reopening, and thus the alleged onset date is May 12, 2005. The ALJ did note that Plaintiff worked for nine months in 2006 and earned $7,263, which approached but did not meet the level of substantial gainful activity. In 2006, the substantial gainful activity amount was $860/month. See www.ssa.gov/oact/cola/sga.html (The official website of the SSA last visited 12/11/2012). Plaintiff's nine month earnings of $7,263 average $807 per month. Although earning this amount did not disqualify Plaintiff from a successful

disability benefits application, the ALJ observed that it also did not "support her assertion of total disability." (*Id*. at 27).

At step two, the ALJ found the medical evidence established that since the date of May 12, 2005, Plaintiff had the following severe impairments: major depressive disorder; generalized anxiety disorder; personality disorder; substance abuse disorder; plantar fasciitis; mild lumbar degenerative disc disease; mild cervical degenerative disc disease; migraine headaches; and knee sprain. (ECF No. 9-2, p. 27).

At Step 3, the ALJ determined that the Plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 CFR Pt. 404 Subpt. P App 1.  Specifically, the ALJ found that Plaintiff's mental impairments "considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.09." (*Id*. at 29).

At Step 4, the ALJ found that Plaintiff had the RFC to perform light work, if that work did not require the performance of more than semi-skilled (SVP 3) tasks or involve more than occasional contact with co-workers or more than casual contact with the general public. (ECF No. 9-2, p. 30-31).  In making this determination, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of her symptoms are not found to be credibly supported by the weight of the evidence." (*Id*. at 32).   The ALJ further found that Plaintiff's subjective statements concerning her alleged symptoms were not supported by objective medical findings. (*Id*.)  The ALJ found the record to be "replete with evidence documenting defiant behavior, failure to appear for treatment, medication non-compliance, and failure to cooperate with recommended treatment tools." (*Id*. at 34).  The ALJ also found that Plaintiff was unable to perform her past relevant work.

At Step 5, the ALJ found, with the assistance of a vocational expert, that Plaintiff could perform the jobs of Cleaner I (Dictionary of Occupational Titles #

323.687-014) and Mail Clerk (DOT # 222.687-022).  The ALJ found that significant numbers of these jobs existed both in the national and regional economy and that Plaintiff could perform these jobs even if she was limited to no more than very superficial contact with both co-workers and the general public.

## VI. ISSUES

Plaintiff raises five issues on appeal: 1) the ALJ erred in disregarding the opinions of the consultative examiners regarding Plaintiff's mental conditions; 2) the ALJ erred in assessing the Plaintiff's RFC; 3) the ALJ erred in relying upon the vocational expert's response to an improper hypothetical; 4) the ALJ erred in assessing Plaintiff's credibility; and 5) the evidence taken as a whole does not support the ALJ's determination. (ECF 19, p. 8-9).  The court notes that the argument supporting these five points is contained in five pages (*Id*. at p. 11-16). Some of the issues/arguments do not appear to be clearly delineated.

## VII. DISCUSSION

**A.  Did the ALJ err in disregarding the opinions of the consultative examiners regarding Plaintiff's mental condition**?

Plaintiff contends the ALJ improperly rejected the opinion of consultative examiners.  This claim is not supported by the evidence.  The ALJ stated: "the undersigned has given great weight to the opinions of the state agency medical consultants who provided residual functional capacity assessments." (ECF No. 9-2, p. 34).  Plaintiff argues that the records of Spokane Mental Health support her argument.  The ALJ considered these records: "Records from Spokane Mental Health do not reflect clinical findings of mental status abnormality or observations of credible functional limitation that provide support for the claimant's assertion of total disability." (*Id.*).

Plaintiff appears to argue that although the ALJ stated she was relying on Dr. Bailey's assessment, she did not adequately consider it.  That argument is not

convincing.  Dr. Bailey found Plaintiff had no "marked" or "extreme" limitations. (ECF No. 9, p. 521).  Dr. Bailey found Plaintiff had only "mild" restriction of the activities of daily living and no episodes of decompensation. (*Id*.).   Dr. Bailey concluded that Plaintiff could work in an environment with superficial public and co-worker contact. (ECF No. 9, p. 527).

The ALJ did not disregard the opinion of Dr. Bailey, and thus Plaintiff's contention that the ALJ erred in disregarding the opinion fails.  As a final observation on this point, it was not clearly briefed.  The Defendant's Memorandum (ECF No. 21) took a broader approach to construing Plaintiff's argument and responds that the ALJ properly considered and evaluated all the medical reports, including those of Dr. Mabee, Amy Robinson, MA, Dr. Bailey, Dr. Rosekrans, and Ms. Gerry, M.Ed. (ECF No. 21, p. 11-17).  The Defendant argues that the ALJ gave adequate reasons for giving less evidentiary weight to the opinions of Dr. Rosekrans and Dr. Mabee.  The record supports that position.

B.  **Did the ALJ err in assessing Plaintiff's residual functional capacity?**

This argument was not thoroughly developed.  The argument devoted to this issue is one paragraph on page 13 of Plaintiff's Memorandum. (ECF No. 19). The argument is: "The ALJ ignored the effects of pain from Plaintiff's physical impairments, but more importantly the limitations posed by the Plaintiff's mental impairments." (ECF No. 19, p. 13).  The ALJ did consider Plaintiff's allegations of physical impairments, and found them largely not supported by the record.  For example, the ALJ observed that despite allegations of back pain "no treating or examining medical source has reported that the claimant has any lifting restrictions" and noted that the orthotics utilized by Plaintiff "were over-the-counter cushions for her shoes as opposed to specialized assistive devices constructed by a licensed professional." (ECF No. 9-2, p. 31).   The ALJ clearly considered Plaintiff's alleged physical limitations as she found the following

physical impairments: plantar fasciitis; mild lumbar degenerative disc disease; mild cervical degenerative disc disease; migraine headaches; and knee sprain.

The ALJ appropriately focused on Plaintiff's mental impairments, just as Plaintiff has done in pursuing this claim. Plaintiff's Disability Report lists the conditions that limit her ability to work as "anxiety and bi polar and depression". (ECF No. 9-2, p. 169). Plaintiff's submittal before this court states that: "Plaintiff alleges entitlement to benefits on the basis of having severe mental conditions." (ECF No. 19, p. 3). The record does not reflect that her physical impairments are disabling. To the contrary, the record shows that Plaintiff's physical complaints are not substantiated or are exaggerated.

For example, Plaintiff complains of GERD (gastroexophageal reflux disease) but the record shows that it was being effectively treated. (ECF No. 9, p. 407). Plaintiff told health care providers she "felt she had a stroke in January of 2006" that was never medically confirmed and that she also "endorsed unconfirmed heart problems." (ECF No. 9, p. 477). In May 2008, she saw an ear, nose, and throat specialist about alleged hearing problems. The conclusion of that assessment was: "She has normal hearing thresholds today and her speech discrimination is excellent." (ECF No. 9, p. 759). In October 2007 she saw an orthapaedic specialist about thumb pain and was diagnosed with a "sprain", the joint being "structurally normal and stable." (ECF No. 9, p. 763). The record also reflects she suffered a knee sprain, but that was effectively treated with physical therapy. (ECF No. 9, p. 827, "She states her knee pain has greatly improved since participating in physical therapy."). Her lower back pain at some points was believed to be sciatica, but in March 2010 was assessed as "does not appear to be actually a sciatica issue, it appears more musculoligamentuous." (ECF No. 9, p. 895). A January 2010 report states: "MRI shows that she does not have any disk herniation, spinal canal narrowing or foraminal narrowing that could account for

her radicular symptoms." (*Id.* at 899). Many of Plaintiff's physical complaints are not substantiated by objective medical assessments.

This court does not suggest that Plaintiff is deliberately manufacturing her complaints of physical ailments, but rather that Plaintiff may be seeking health care treatment more frequently than normal due to her anxiety disorder. The examining physician at Rockwood Clinic stated in his report of January 13, 2010, when she was assessing complaints of leg and back pain: "The patient also has a psychiatric history including borderline personality disorder which may make it difficult to assess her symptoms as this may play a role in that also." (*Id.* at 899).

The ALJ did not err in assessing Plaintiff's RFC. Plaintiff's own Statement of Health, Education, and Employment, dated August 9, 2007 (ECF No. 9, p. 186-195) also supports a finding that she can perform light work. Her Function Report indicates that she has no problems with self-care, she takes care of her pets, prepares meals, does housework, and is able to handle her finances. (Id. at 188-192). Additionally her Function Report indicates she self-reported going outside "everyday" and socializing with others in person or on the phone "almost daily". (Id. at 191-92). This was in contrast to her testimony before the ALJ which was that her anxiety prevents her from going out: "Well, it [anxiety episode] usually doesn't last just a day. It usually lasts about a week or two. At least once a month." (ECF No. 9-2, p. 80). Plaintiff reported to her registered nurse practitioner in July 2007 that she had "been attending yoga, bike riding, and basically keeping very active during the day." (ECF No. 9, p. 495).

The ALJ's assessment of Plaintiff's RFC is supported by the record.

**C.  Did the ALJ err in relying upon the vocational expert's response to a hypothetical?**

The ALJ posed three different hypotheticals to the vocational expert. The expert identified three types of work Plaintiff could perform: Home Health Aide

(her prior work), Cleaner 1, and Mail Clerk.  Plaintiff's counsel questioned the expert on cross-examination as to whether Plaintiff could return to her past employment as a home health aide.  This challenge was apparently successful, as the ALJ concluded that Plaintiff could not perform her past work as a home health aide.

Plaintiff contends that the ALJ should have followed the third hypothetical in which it was assumed that Plaintiff had such marked limitations in dealing with supervisors, coworkers, or the general public that she would require unscheduled breaks and absences.  The second hypothetical, which the ALJ apparently did rely on, posed that Plaintiff had a "marked degree of social functioning limitation" and would therefore be limited to "very superficial" social contact.  Given those parameters, the vocational expert still opined that Plaintiff could perform the Mail Clerk and Cleaner 1 jobs.

The ALJ's hypotheticals were appropriate.  An ALJ is required to include only those limitations she finds supported by substantial evidence in her hypothetical question. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001). The record does not demonstrate that Plaintiff's psychological problems would result in numerous unpredictable absences.  In 2007, Dr. Scott Mabee and Kristin Sims performed a psychological evaluation.  It contained a section entitled, "Barriers to Employment," and this section contains no mention that Plaintiff would require unscheduled breaks or absences. (ECF No. 9, p. 443).  Although the report recognizes that Plaintiff's conditions "make her limited in the work force," it concludes that she would benefit from job skills training to increase her ability to return to work.  It also reports that she would "feel more comfortable in social situations where there are only a few people or one on one." (*Id.*).  A psychological evaluation by Amy Robinson, MS, in March 2008, concluded that Plaintiff's overall functioning "suggests that she would be unable to function in the typical

work environment," but did not opine that Plaintiff was likely to have numerous unpredictable absences from work. (ECF No. 9, p. 591).  A Psychological Services Spokane report from March of 2009 did not find any "marked" limitations and indicates that Plaintiff should not be impaired for longer than six months.  At an April 2010 doctor's office visit for an elbow injury, Plaintiff apparently told the physician her panic attacks were under control as the note reflects that chronic problems including panic attacks were "under control per pt report with medications and lifestyle changes." (ECF No. 9, p. 928).

The ALJ did not err in framing the hypothetical questions or relying on the vocational expert's testimony.

D. **Did the ALJ err is assessing Plaintiff's credibility?**

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credibly supported by the evidence. (ECF No. 9-2, p. 32).  An ALJ, when making a credibility determination adverse to the Plaintiff, must give specific, clear, and convincing reasons for doing so. *Thomas v. Barnhart*, 278 F.3d 947, 958-9 (9th Cir. 2002).  If the ALJ's credibility finding is supported by substantial evidence in the record, then the court must not engage in second-guessing. *Id.* at 959.  The ALJ's reasoning in this case is extensive and sets forth specific, clear, and convincing reasons.  The ALJ noted Plaintiff's secondary gain motivation which she expressed when she told a therapist that she couldn't work for a year, due to the application process for Social Security. (ECF No. 9, p. 32 & 377).  The ALJ also found that Plaintiff's statements about substance abuse were unreliable and inconsistent (*Id.* at 33).  The ALJ found that Plaintiff had been jailed for a domestic abuse allegation in 2007, and that after allegedly hitting her head after falling from a bunk at the jail, a physician had noted possible drug seeking behavior - - being "very insistent" in a request for Demerol and not appearing to be in as much pain as she claimed.

(*Id.* at 33).  The ALJ also found the record to be "replete with evidence documenting defiant behavior, failure to appear for treatment..." (*Id.* at 34).

The ALJ gave clear and adequate reasons for her credibility determinations. An ALJ is responsible for determining credibility, resolving conflicts in the medical testimony, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The ALJ's credibility determinations are adequately supported by the record.

**E.  Does the record as a whole support the ALJ's determination that Plaintiff is not disabled?**

Although listed as a separate issue on appeal, there is no separate argument devoted to this point.  Thus, this point must rely on the arguments presented in the four prior points; arguments which this court has rejected.  The record as a whole supports the ALJ's determination.  Plaintiff is a younger individual, in her 30's, who has a high school education and received some specialized training as a CNA. The ALJ properly considered all of Plaintiff's impairments and found they did not render her unable to work and thus she was not disabled.

The Commissioner's and ALJ's decision is supported by substantial evidence in the record and is based on proper legal standards. It must therefor be affirmed.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

**VIII. CONCLUSION**

For the aforesaid reasons, the Commissioner's decision must be and is affirmed.

**IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 20) is **GRANTED.**

3.  The Clerk is directed to enter Judgment dismissing the Complaint and the

claims therein with prejudice.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order, enter Judgment as directed above, and close this file.

DATED this 26th day of December, 2012.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE
